NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUSTICE RASIDEEN ALLAH,** | **Civil Action No. 08-1753 (JAP)** |
| **Plaintiff,** | |
| **v.** | |
| **MICHELE RICCI, et al.,** | **MEMORANDUM OPINION** |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Justice Rasideen Allah's Motion for Sanctions against Defendants alleging spoliation of evidence and improper ex parte communication with the Court. Defendants oppose Plaintiff's motion. The Court has fully reviewed the papers submitted in support of and in opposition to Plaintiff's motion, and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth below, Plaintiff's motion for sanctions is DENIED.

I.      **Background**

Plaintiff Justice Rasideen Allah ("Allah") is an inmate of the New Jersey State ("NJS") Prison where he is currently serving a sentence of 30 years to life. For three months, from August 21, 2006 to November 21, 2006, Plaintiff was assigned to and housed in a single bed cell located in the West Compound of NJS Prison, known as Cell #32, Tier 3, 7 Wing ("Cell 32"). Plaintiff filed a Complaint against Defendants alleging that the conditions he was exposed to in Cell 32 amounted to "cruel and unusual punishment" in violation of his constitutional rights

under the Eighth Amendment.  Several motions are now pending before the Court in this matter,

including Defendants' Motion to Dismiss on Summary Judgment.  Plaintiff brings this Motion

for Sanctions alleging that Defendants made repairs to Cell 32, which resulted in the spoliation of

evidence, and that Defendants had improper *ex parte* communication with the Court which

resulted in the issuance of a Protective Order.

### A. Background Information Relevant to Plaintiff's Claims of Spoliation

Plaintiff retained Alan Hildebrant, P.E., an engineering expert, to assist him in his claim

against Defendants.  On November 12, 2010, Mr. Hildebrant inspected Cell 32 and took

photographs in order to formulate his expert opinion.  Shortly thereafter, prison officials

performed maintenance on Cell 32.  On April 8, 2011, Defendants' expert, Kenneth Karle, P.E.,

inspected Cell 32 and additional pictures of the cell were taken sometime in April 2011.

Plaintiff had the opportunity to review and compare certain photographs taken during the

parties' respective inspections of Cell 32[1].  Plaintiff argues that the NJS Prison conducted

"massive repairs" to the cell.   Specifically, Plaintiff asserts that Defendants re-painted Cell 32,

that a hole in the steel structure appears to have been welded shut, that new parts which include

"water supply hoses and PVC traps" were installed, and that Defendants placed some sort of

caulking material in the seams of the cell.  Plaintiff alleges that Defendants made these repairs in

preparation for their expert's inspection and Plaintiff further contends that this action that was a

"deliberate attempt to spoil the evidence in this case."  Plaintiff seeks to bar all references to

---

[1]Plaintiff repeatedly points out that the inspection performed by Defendants' expert occurred on April 8, 2011 while the photographs are dated April 21, 2011.  The Court determines that this alleged discrepancy is irrelevant in light of the fact that Plaintiff is not claiming that any further repairs were made between those dates.

Defendants' expert report.  He also seeks monetary sanctions and asks the Court to grant all injunctive and monetary relief identified in his Complaint.  Plaintiff states that he "would not be opposed to [D]efendants expert utilizing the photos which were taken during [his] expert's inspection."[2]

Defendants admit that the cell was re-painted.  They maintain that the re-painting of Cell 32 was part of "routine maintenance" and was performed "by a detail of inmates, in accordance with the prison's normal practices."  Defendants point out that there was no Court Order in place which prevented them from continuing the regular operation of the prison and, in the process, performing routine maintenance.  Defendants state that they "deferred the performance of routine maintenance on Cell 32 until after the inspection of [P]laintiff's expert, based upon advice received from the office of the Attorney General of New Jersey."  Thus, Defendants argue that they refrained from making repairs to the cell specifically to avoid any claims of spoliation.  In addition, Defendants note that a photographic record of Cell 32 was created before it was re-painted during the inspection performed by Plaintiff's expert.

Noticeably absent from Defendants' brief is any mention regarding Plaintiff's allegations of additional and more substantial repairs; including welding, caulking and installation of water supply hoses and PVC traps.  Defendants do not admit or deny making these repairs.  Defendants do not respond to Plaintiff's suggestion that Defendants' expert use information gathered by Plaintiff's expert.

---

[2]In his Reply brief, Plaintiff expands the scope of his initial Motion and complains about the time restraints and limits on the permissible areas of inspection which were imposed upon his expert.  Plaintiff asserts that Defendants' expert was not subject to these restrictions.  As these are not relevant to Plaintiff's request for sanctions upon Defendants, the Court will not address these allegations.

**B.  Background Information Relevant to Plaintiff's Claim of *Improper Ex Parte Communication*.**

On December 9, 2010, Defendants submitted a proposed form of Protective Order to the Court [Docket No. 80].  On December 14, 2010, the Court entered the Protective Order [Docket No. 81].  Shortly thereafter, Plaintiff wrote to the Court alleging that he had not received notice or a copy of the proposed form of Order before its entry and voicing other concerns. [Docket No. 82].  The Court converted Plaintiff's letter into a Letter Order in which It refused to modify or vacate the Protective Order.  Since that time, Plaintiff has formally moved to vacate the Protective Order.  The Court has issued an Order vacating the Protective Order in part and reaffirming in part [Docket No. 92].[3]  Plaintiff has appealed that Order and Defendants have opposed the appeal.  That matter is still pending before the Court.

Plaintiff alleges that he was not notified in advance that Defendants were seeking a Protective Order.  He states that he was not properly served with a copy of Defendants' motion and that counsel for Defendants did not attempt to confer with him to resolve the issue before bringing it to the attention of the Court as required by the Rules.  Plaintiff is suspicious of Defendants' explanations for the lack of service and questions why Defendants have waited until now to set forth these explanations.

Plaintiff further asserts that he was prejudiced by Defendants' *ex parte* communication with the Court because he was denied the opportunity to present arguments to the Court regarding the Protective Order *before it was issued*.  Plaintiff states that he has the "dubious task

---

[3]The record shows that the Court issued the Protective Order in large part due to security reasons.

of fighting against a motion which had already been granted." Thus, it is Plaintiff's position that he was still prejudiced even though he was able to challenge the Protective Order in May 2011 and the Order was modified. Further, he argues that the fact that he was able to convince the Court to modify the Order is an indication that he could have successfully opposed the motion at the outset had he been properly notified of its existence.

Although his motion is for sanctions based on Defendants' actions, Plaintiff devotes much of his motion addressing the legitimacy and fairness of the Protective Order itself. Plaintiff repeatedly contends that he is at a disadvantage because the Protective Order precludes him from viewing certain photographs and from seeing the full expert reports. Plaintiff notes this as further evidence of the prejudicial impact of the Protective Order and the manner in which it was entered. He seeks damages in the form of monetary fines imposed upon Dianne Moratti and Russell Passamano and he requests, again, that the December 2010 Protective Order be vacated in its entirety.

In response to Plaintiff's allegations, Defendants assert that they did not intentionally circumvent Plaintiff when submitting the Protective Order to the Court. Defendants take the position that Plaintiff actually received a copy of the proposed form of Order. In the event that Plaintiff is accurate in his assertion that he never received same, Defendants suggest that the documents' failure to reach him could be due to a "glitch in transmission." Defendants maintain that they never acted improperly and that there is no basis for sanctions. Defendants contend that Plaintiff has not been prejudiced and they point to the docket as a reminder that Plaintiff has had many opportunities to voice his objections to the Protective Order.

II.     **Analysis**

A.   **Plaintiff's Claims of Spoliation.**

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).  It occurs "when a party has intentionally or negligently breached its duty to preserve potentially discoverable evidence[.]" *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518-519 (D.N.J. 2008).  The duty to preserve evidence arises when a party reasonably believes that litigation is foreseeable and, as such, may arise "many years before litigation commences[.]" *Micron Technology, Inc. v. Rambus Inc.*, 255 F.R.D. 135, 148 (D.Del. 2009).

Evidence of spoliation may give rise to sanctions, which include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference (i.e., the spoliation inference); fines; and attorney's fees.  *Mosaid Tech., Inc. v. Samsung Elec. Co., Ltd.*, 348 F.Supp.2d 332, 335 (D.N.J. 2004).  The imposition of sanctions is warranted "when there is evidence that a party's spoliation of evidence threatens the integrity of th[e] Court."  *Id*.

In this case, it is clear that the condition of Cell 32 was, and is, relevant to Plaintiff's case and it was certainly foreseeable that evidence of its condition would come into play in this litigation.  Plaintiff argues that there is "more than enough evidence in the record to demonstrate that defendants.." "...deliberately" and "malicious[ly]..." "...committed acts which constituted spo[li]ation of the evidence."  The Court disagrees.  The Court finds that Defendants did *not* intentionally or negligently breach their duty to preserve potentially discoverable evidence.

-6-

Rather, the record indicates that Defendants took affirmative steps to preserve the condition of the cell so as to afford Plaintiff's expert the opportunity to inspect the cell and make a photographic record and, ironically, so as to avoid the complaint of spoliation altogether.

As evidenced in the Certification of Susan Scott, no maintenance had been performed on Cell 32 since Plaintiff's occupation of same in November 2006.  Indeed, if no maintenance had been performed in nearly four years, the cell would certainly be in need of repairs and it would be reasonable for Defendants to perform same.  This is especially true given Defendants' assertion that Cell 32 is still in use.  However, Defendants recognized the importance and significance of allowing an inspection prior to making any repairs and they deliberately refrained from performing maintenance until after Mr. Hildebrant's inspection.  While Defendants failed to address the extent of repairs made beyond painting, a photographic record of the cell, as well as Plaintiff's own expert's observations and report regarding the cell in its pre-repair condition, may be used by Plaintiff in support of his claims.  Thus, Plaintiff has not suffered any prejudice due to the repairs made to the cell in question; nor has Defendant acted improperly.  Accordingly, Plaintiff's motion for sanctions for spoliation is denied.

**B.  Plaintiff's Claims of Improper *Ex Parte* Communication and the Resulting Protective Order.**

With respect to Plaintiff's claims that Defendant participated in improper *ex parte* communication with the Court because Plaintiff did not receive prior notice of Defendants' application for a Protective Order, the Court has tangentially addressed this issue in prior Orders and will address it again in Plaintiff's Motion to Appeal the Court's prior ruling in this matter. Throughout his motion papers, Plaintiff attacks the fairness of the Protective Order and sets forth

the various ways in which he believes he is disadvantaged by its existence.  In his motion,

however, he seeks to sanction Defendants for alleged misconduct.  The Court will therefore

address the appropriateness of sanctions and not the legitimacy of the Protective Order itself.

Plaintiff asserts that Defendants intentionally and surreptitiously submitted their motion

to the Court without first noticing him.   Plaintiff is very clear that it is his position that

Defendants' actions were a "deliberate violation of the Rules governing *ex parte* communications

with the Court."  Plaintiff contends that, as a result of Defendants' devious actions, he was

denied an opportunity to object to the Protective Order before it was issued and suffered

prejudice.

Defendants' application for the Protective Order indicates that a copy was sent to Plaintiff

and Plaintiff's expert.  (*See* Docket Entry No. 80)  There no evidence before the Court to support

a finding that Defendants intentionally failed to serve notice of their motion upon Plaintiff.  Even

if Plaintiff did not receive the initial notice,  Plaintiff has since made multiple challenges to the

Protective Order which have been considered by this Court and denied.  Even when viewed in a

light most favorable to Plaintiff, Defendants' actions certainly do not rise to the level of

sanctionable behavior.  Plaintiff's motion is therefore denied in this respect.

**III.**   **Conclusion**

For the reasons stated above, Plaintiff's motion to amend is DENIED.  An appropriate

Order follows.
Dated: October 4, 2011

  s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

-8-