**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


JUSTICE RAISDEEN ALLAH,        :
                               :   Civil Action No. 08-1753 (JAP)
          Plaintiff,           :
                               :
     v.                        :           O P I N I O N
                               :
MICHELLE R. RICCI, et al.,     :
                               :
          Defendants.          :
```

**APPEARANCES:**

Justice Raisdeen Allah, <u>Pro</u> <u>Se</u>
#230948
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Benjamin Clarke, Esq.
Russell J. Passamano, Esq.
DeCotiis, Fitzpatrick, Cole & Wisler
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, NJ 07666
Co-Counsel for Defendants

Dianne M. Moratti
Office of the NJ Attorney General
Richard J. Hughes Complex
CN 112
Trenton, NJ 08625
Co-Counsel for Defendants

**PISANO, District Judge**

This matter comes before the Court upon Defendants' motion to dismiss, or in the alternative, for summary judgment, <u>see</u> Docket Entry No. 98, and Plaintiff's motion for summary judgment,

see Docket Entry No. 99.  For the reasons set forth below, Defendants' motion will be granted, and Plaintiff's denied.

## I. Legal Standard

### 1. Rule 12(b)(6) Standard

Under Fed. R. Civ. P. 12(b)(6), the defendant bears the burden of showing that no claim has been presented.  See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A district court must accept as true all of a plaintiff's factual allegations, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  A complaint must contain sufficient factual matter to state a claim that is facially plausible.  See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

### 2. Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56 if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832–33 (3d

Cir. 2002). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether summary judgment should be granted, the Court considers the facts drawn from the "pleadings, the discovery and disclosure materials on file, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

However, while the Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor," Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted), summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact, and this requires more than the "mere existence of a scintilla of evidence" supporting the non-moving party.[1]

---

[1] Simply put, self-serving "unsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Anderson, 477 U.S. at 248 (the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial).

3

Anderson, 477 U.S. at 252; see also Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  Thus, to survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.

**II.   Background**

    **1.   Procedural Background**

Plaintiff submitted his complaint on April 10, 2008.  See Docket Entry No. 1.  This Court screened the complaint for sua sponte dismissal, see Docket Entry Nos. 2 and 3, and issued a decision dismissing the complaint without prejudice.  Plaintiff filed a motion to amend, see Docket Entry No. 4, and the case was reopened and summonses were issued.  See Docket Entry Nos. 6, 7, 10, 11.  After numerous requests for extensions of time to answer, Defendants answered the complaint on March 31, 2009, see Docket Entry no. 35, and a pretrial memorandum was issued on April 2, 2009.  See Docket Entry No. 36.  Discovery proceeded, and on June 24, 2011, Defendants filed this motion to dismiss.  Five days later, Plaintiff filed a motion for summary judgment.  See Docket Entry Nos. 98, 99.  Plaintiff then filed his opposition to Defendants' motion.  See Docket Entry Nos. 103, 106.  Defendants opposed Plaintiff's motion with a Brief filed on August 1, 2011.  See Docket Entry No. 106.

On October 4, 2011, the Honorable Tonianne J. Bongiovanni issued an Opinion and Order denying Plaintiff's motion to amend his complaint. See Docket Entry Nos. 100, 116, 117.

### 2. **Factual Background**

Plaintiff's original complaint was examined by this Court on sua sponte screening. The following facts were taken from Plaintiff's original complaint and are reproduced here for the convenience of the Court and parties:

> Plaintiff states that from August 31, 2006 until November 21, 2006, he was housed at New Jersey State Prison in a cell that "was dilapidated due to extensive water damage." Plaintiff states that he had cups and styrofoam trays placed throughout his cell to catch water, and had tried to clog leaks with soap so that the water was slowed down. He contends that the water fell on the bed, the tables, all four walls, and a shelf bolted to the wall. He notes that the water that ran from the roof usually accumulated in huge puddles between certain cells on the tier. Plaintiff states that he informed all defendants of this water damage to no avail. In fact, various defendants inspected the cell and "saw nothing wrong with the cell." At one point, he was told that he would be removed from the cell, but nothing happened. Then various defendants stated that they would talk amongst each other, and again nothing happened. Finally, on November 21, 2006, the prison psychologist saw the cell expressed disbelief at the water leaking in. The psychologist allegedly made some calls, and an hour later Plaintiff was moved to a new cell.
>
> Plaintiff comments that he has demonstrated "an enormous amount of restraint" in dealing with the defendants inaction. He asks for monetary and other relief.

Docket Entry No. 2 at pp. 2-3. In his motion to amend the complaint, Plaintiff indicated that his personal safety was

compromised by the water leaks. He alleged facts indicating that all defendants knew about the problem, wrote false reports considering the problem, and failed to act, causing a substantial risk of harm to his, and other inmates', safety. Plaintiff states that the cells were "dilapidated" for 3 months, and exposed electrical wires caused electrical problems, and the light in the cell to spark. Plaintiff noted that he suffered from headaches, sleep deprivation, and anxiety attacks from having to sleep on the wet and cold sheets in unsafe conditions. Despite his requests, defendants refused to remove him from the cell. Thus, Plaintiff alleged enough facts to proceed past sua sponte screening, asserting an Eighth Amendment violation concerning the conditions of his confinement, and this Court ordered that his case be reopened, and that Defendants respond. Docket Entry Nos. 4, 6.

### III. Discussion

    **1.   Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment**

Defendants' Motion asserts four points: (1) Plaintiff's claims are asserted against Defendants in their official capacities and therefore are barred by the Eleventh Amendment; (2) Plaintiff has no viable cause of action under the Eighth Amendment; (3) Plaintiff's complaint is barred because he failed to exhaust his administrative remedies; and (4) Plaintiff's expert report should be stricken. See Docket Entry No. 98.

2. **Plaintiff's Motion for Summary Judgment**

Plaintiff asserts that summary judgment should be granted in his favor because there is no genuine issue of material fact in dispute, because Plaintiff's expert has found that the cell suffered from water infiltration, there was water damage to his cell, and after knowing this, Defendants ignored the facts and continued to house inmates in the cell.  Plaintiff argues that Defendants violated the New Jersey Administrative Code, 10A:5-3.4(c), and that he has met his burden with respect to each named defendant.  Plaintiff claims that he has shown deliberate indifference as to each defendant.  See Docket Entry 99.

3. **Analysis**

   a. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

7

alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

    b.   Exhaustion

Defendants assert that Plaintiff has not exhausted remedies as required under the Prison Litigation Reform Act ("PLRA").

Pursuant to 42 U.S.C. § 1997e (a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is mandatory.  Prisoners must exhaust all "available" administrative remedies, even where the relief sought, for example, monetary damages, cannot be granted by the administrative process.  See Booth v. Churner, 532 U.S. 731, 734, 739 (2001).

Section 1997e(a) requires "proper exhaustion," as that term is used in administrative law.  See Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  Id. at 90.  Compliance with prison grievance procedures is all that is required to properly exhaust, thus "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the

8

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007)(holding that exhaustion was not per se inadequate simply because an individual later sued was not named in the grievance, where prison policy did not require the prisoner to identify a particular responsible party). See also Spruill v. Gillis, 372 F.3d 213, 231 (3d Cir. 2004) ("prison grievance procedures supply the yardstick" for determining what steps are required for exhaustion).

The Court of Appeals for the Third Circuit has held that the exhaustion requirement includes a procedural default component. See Spruill, 372 F.3d at 230. A court may consider extrinsic materials for determining whether a procedural default should be excused. See Williams v. Beard, 482 F.3d 637 (3d Cir. 2007).

Pursuant to N.J.A.C. 10A:8-1.1 to -3.6, the New Jersey State Prison adopted an Inmate Handbook which set forth information about the Inmate Request and Remedy Form System. The "Inmate Request System & Remedy Form," ("IRSF") is used "to provide a procedure for . . . addressing, *on a first step basis* through the inmate request coordinator, concerns, problems or complaints which may be experienced on a daily basis." (Emphasis in original). Under ordinary circumstances, the IRSF will be processed within 30 working days. In addition, the Handbook provides that the prisoner may appeal a staff response to the

9

IRSF.  The appeal must be submitted within 10 days of the date the staff response is returned to the prisoner, must be submitted using the yellow copy of the IRSF returned to the prisoner, must use Part 4 of the form (designated for appeals), and may use additional paper.  An appeal with a decision rendered completes the process at the institutional level.  This policy was in effect until, in 2008, the New Jersey Department of Corrections adopted a standardized Inmate Handbook for all New Jersey Department of Corrections facilities.  The NJDOC procedures essentially mirrored the previous procedures at New Jersey State Prison, although requests are divided into three categories: a "Routine Inmate Request," an "Interview Request," or an "Administrative Appeal."  In addition, however, the NJDOC Handbook provides:

> All inmates may use the Inmate Remedy System. You must use this system to help you obtain information and present your issues, concerns or complaints relative to issues or conditions under the jurisdiction of the NJDOC that affect you personally. This process *must* be used . . . to request an appeal of a decision or finding rendered by correctional facility staff in regard to a "Routine Inmate Request" . . . that you have previously presented.

(Emphasis added).  There is no administrative appeal beyond the first level of appeal at the correctional institution level.

Here, Plaintiff was required to exhaust all available administrative remedies.  Although Plaintiff filed a remedy form with regard to a different cell than the cell at issue here, his

10

remedy form was returned as it was filed on the wrong form. Plaintiff did not pursue or perfect any grievance with regard to the cell at issue, Cell 32. See Certification of Assoc. Administrator Holmes, ¶ 7, attaching Plaintiff's IRFS).

Accordingly, Plaintiff has failed to exhaust his administrative remedies, as required by 28 U.S.C. § 1997e(a) and the complaint may be dismissed, without prejudice, as against all Defendants for this reason.

    c.    Official Capacity Suits

Plaintiff seeks to sue the defendants in their official capacities. Although he attempted to amend his complaint, his motion to amend was denied.

The Supreme Court has held that states and its departments are not persons within the meaning of § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). While state officials sued in their official capacity are also not "persons" subject to a suit for damages under § 1983, an official capacity suit against a state official seeking prospective injunctive relief is not treated as an action against the State. See id. at 71 n.10; Kentucky v. Graham, 473 U.S. 159, 167 n.14. However, a

11

state official sued in his individual capacity is a "person" subject to suit under § 1983.  See Graham, 473 U.S. at 167-68.

Based on the foregoing, Plaintiff's request for monetary relief against defendants must be denied, and Defendants' Motion to Dismiss must be granted.  As to claims for prospective injunctive relief, this Court finds that the record reflects that the cell has been painted and is in reasonable repair.  See Certification of Russell J. Passamano, Esq., attaching expert report, Ex. C.

        d.    Eighth Amendment Standard

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates ."  Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see

12

Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

In asserting an Eighth Amendment conditions of confinement claim, the Plaintiff must satisfy both an objective and subjective test. See Wilson v. Seiter, 501 U.S. 294 (1991). First, under the objective test, Plaintiff must show that Defendant's conduct resulted in the denial of the "minimal civilized measure of life's necessities." Id. at 298. For the subjective prong, Plaintiff must show that prison officials acted with deliberate indifference. See id. at 303.

In this case, Plaintiff has not met the objective prong of the test. The record reflects that Plaintiff was housed in the cell at issue from August 31, 2006 through November 21, 2006, a period of almost three months. (Complt. ¶ 6; Pltf. Dep. Tr. at 32). At deposition, Plaintiff stated that it rained approximately 12 times during the three months he was housed in the cell, and that after each rain, it leaked. (Dep. Tr. at 98). The problems with the cell were on the days it rained, and two or three days after it rained, not consistently for three months. (Dep. Tr. at 71). Plaintiff testified that the leaky, dilapidated conditions of the cell caused him headaches, but not any serious physical injuries. (Dep. Tr. at 128).

The Court of Appeals for the Third Circuit, in reviewing a conditions claim concerning lack of significant air flow, poor

13

lighting, or nutritionally inadequate food, has held that the conditions as described by the district court were not "dangerous, intolerable or shockingly substandard" as to violate the Eighth Amendment, and noted that "[t]he constitution does not mandate comfortable prisons."  See Peterkin v. Jeffes, 855 F.2d 1021, 1027 (3d Cir. 1988)(citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  Nor does discomfort alone meet the requirements for an Eighth Amendment conditions claim.  See Tinsley v. Vaughn, 1991 WL 95323 at *6 (E.D. Pa. 1991).

In this case, the record reflects that Plaintiff did not suffer any substantial injury, or a significant risk of harm. While Plaintiff suffered discomfort, he has not shown that he has been injured, or was deprived of the minimal measure of life's necessities.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss and for Summary Judgment is granted.  Plaintiff's Motion for Summary Judgment is denied.

An appropriate Order follows.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: January 25, 2012